UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| METHODIST HOSPITALS OF DALLAS, *d/b/a* Methodist Health System, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 3:20-CV-1504-B |
| AFFILIATED FM INSURANCE COMPANY, | § § § § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendant Affiliated FM Insurance Co. ("AFM")'s and Plaintiff Methodist Hospitals of Dallas d/b/a Methodist Health System ("Methodist")'s cross-motions for partial summary judgment (Docs. 11 and 14, respectively), as well as Methodist's objection to AFM's summary-judgment evidence (Doc. 26) and motion to strike AFM's supplemental declaration of William Norsworthy (Doc. 30). For the reasons that follow, AFM's motion for partial summary judgment (Doc. 11) is **GRANTED**, and Methodist's (Doc. 14) is **DENIED**. Further, Methodist's objection to AFM's summary-judgment evidence (Doc. 26) is **OVERRULED** as moot **WITHOUT PREJUDICE**, and, similarly, its motion to strike (Doc. 30) is **DENIED** as moot.

I.

**BACKGROUND**[1]

This is an insurance dispute. AFM issued a property insurance policy to Methodist for the period from October 1, 2017, to October 1, 2018. Doc. 13-2, Def.'s App., 96; Doc. 16-3, Pl.'s App., 81. Methodist Dallas Medical Center ("MDMC") was covered under the policy. Doc. 13-2, Def.'s App., 96; Doc. 16-3, Pl.'s App., 81. The policy, an all-risk policy, "cover[ed] property . . . against all risks of physical loss or damage," subject to certain exclusions. Doc. 13-1, Def.'s App., 41 (emphasis omitted); Doc. 16-2, Pl.'s App., 23 (emphasis omitted). As relevant here, the policy contained two groups of exclusions.

Group I "exclude[d] loss or damage directly or indirectly caused by or resulting from [certain enumerated events][2] regardless of any other cause or event, whether or not insured under th[e] Policy, contributing concurrently or in any other sequence to the loss or damage[.]" Doc. 13-1, Def.'s App., 42; Doc. 16-2, Pl.'s App., 24. Group II "exclude[d, among other things,] . . . [l]oss or damage caused by or resulting from: a) [c]hanges in temperature[; or] b) [c]hanges in relative humidity, [a]ll whether atmospheric or not, except as provided by the Change of Temperature and Off-Premises Service Interruption coverages in this Policy" (the "Temperature/Humidity Exclusion" or the "Exclusion"). Doc. 13-1, Def.'s App., 43–44; Doc. 16-2, Pl.'s App., 25–26.

"On or near September 7, 2018, a thunderstorm caused multiple power surges at MDMC,"

---

[1] The Court derives its statement of facts from the parties' stipulated facts and the insurance policy at issue. Any disputed fact is noted as the contention of one party.

[2] "Nuclear reaction or nuclear radiation or radioactive contamination"; "[h]ostile or warlike action"; "[t]errorism"; "[e]arth movement"; and "[f]lood" were some of the events excluded under Group I. Doc. 13-1, Def.'s App., 42–43; Doc. 16-2, Pl.'s App., 24–25.

which in turn "caused [two chillers] at MDMC to shut down" for at least four hours. Doc. 13-2, Def.'s App., 96–97; Doc. 16-3, Pl.'s App., 81–82. The chillers at MDMC cool "the operating rooms, emergency department, and other patient care areas[.]" Doc. 13-2, Def.'s App., 97; Doc. 16-3, Pl.'s App., 82. Immediately following the September 7 power surge, these areas "experienced a rapid rise in temperature and moisture" because "the air handlers" pulled "hot and humid air into the building" and the chillers were not able to cool the air. Doc. 13-2, Def.'s App., 97; Doc. 16-3, Pl.'s App., 82. This caused "high humidity" in the "operating rooms and other patient care areas[.]" Doc. 13-2, Def.'s App., 97; Doc. 16-3, Pl.'s App., 82. "As a result, moisture accumulated on the ceiling, floor, cabinets, and other surfaces of the [affected rooms.]" Doc. 13-2, Def.'s App., 97; Doc. 16-3, Pl.'s App., 82.

Importantly, "surgical and other supplies" were kept in the affected rooms. Doc. 13-2, Def.'s App., 97; Doc. 16-3, Pl.'s App., 82. According to Methodist, moisture accumulated on these paper-packaged supplies, rendering them unfit for use under the Texas Department of State Health Services Hospital Licensing regulations. Doc. 15, Pl.'s Br., 6 (citations omitted). Methodist maintains that it "lost $8 million in sterile surgical stock and supplies as a result of the shutdown of the [c]hillers." *Id.* at 7 (citation omitted). Methodist timely filed a claim under the policy for the loss to its surgical stock, seeking $8,197,984.78 to replace it. Doc. 13-2, Def.'s App., 97; Doc. 16-3, Pl.'s App., 82. AFM denied Methodist's claim, relying in part on the policy's Temperature/Humidity Exclusion. Doc. 13-2, Def.'s App., 97; Doc. 16-3, Pl.'s App., 82.

Upon the parties' request, the Court set a schedule for the parties to file and brief the now-pending cross-motions for summary judgment. Doc. 10, Order, 1. In doing so, the Court defined the scope of the cross-motions as limited to "resolving the issue of 'whether the temperature and

humidity exclusion applies to preclude coverage under Methodist's claim for all risk coverage.'" *Id.* (quoting Doc. 9, Jt. Status Report, 4). The motions are each fully briefed and ripe for review. Though the parties raise some collateral issues in their briefing, both acknowledge that the sole question presented by the pending cross-motions is whether the Temperature/Humidity Exclusion applies to Methodist's loss of its surgical stock. Doc. 12, Def.'s Br., 1 (stating that the "[m]otion is limited to the parties' dispute regarding whether the Policy's exclusion for loss or damage caused by or resulting from changes of temperature and/or changes to relative humidity precludes Methodist's claim"); Doc. 15, Pl.'s Br., 1 (seeking "den[ial of AFM's] Tenth Affirmative Defense (the Temperature/Humidity Exclusion)"). Below, the Court answers that question in the affirmative. Because the Court does not rely on Methodist's contested evidence in reaching this conclusion, Methodist's evidentiary disputes are moot for the purposes of the pending cross-motions.

## II.

## LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The substantive law governing a matter determines which facts are material to a case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The summary-judgment movant bears the burden of proving that no genuine issue of material fact exists. *Latimer v. SmithKline & French Lab'ys*, 919 F.2d 301, 303 (5th Cir. 1990). However, if the non-movant ultimately bears the burden of proof at trial, the summary-judgment movant need not support its motion with evidence negating the non-movant's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Rather, the summary judgment movant may satisfy its burden by pointing to

the mere absence of evidence supporting the non-movant's case. *Id.* When the movant bears the burden of proving an affirmative defense at trial, "it must establish beyond dispute all of the defense's essential elements." *Bank of La. v. Aetna U.S. Healthcare, Inc.*, 468 F.3d 237, 241 (5th Cir. 2006) (citing *Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003)).

Once the summary-judgment movant has met this burden, the non-movant must "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (per curiam). Factual controversies regarding the existence of a genuine issue for trial must be resolved in favor of the non-movant. *Id.* Nevertheless, a non-movant may not simply rely on the Court to sift through the record to find a fact issue but must instead point to specific evidence in the record and articulate precisely how that evidence supports the challenged claim. *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). Moreover, the evidence the non-movant does provide must raise more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). This evidence must be such that a jury could reasonably base a verdict in the non-movant's favor. *Anderson*, 477 U.S. at 248. If the non-movant is unable to make such a showing, the court must grant summary judgment. *Little*, 37 F.3d at 1075.

### III.

### ANALYSIS

AFM moves for partial summary judgment on the ground that the Temperature/Humidity Exclusion applies because it unambiguously excludes coverage for loss directly caused by a change in temperature or humidity, and no exception to the Exclusion applies. Doc. 12, Def.'s Br., 7, 10, 14. In response, Methodist seeks partial summary judgment that the Exclusion does not apply on the

grounds that: (1) the Exclusion must be interpreted narrowly against AFM; and (2) the Exclusion requires that a change in temperature or humidity be the *sole* cause of the loss. Doc. 15, Pl.'s Br., 8, 10 (emphasis added). The Court first addresses Methodist's contention that the Temperature/Humidity Exclusion requires that a change in temperature or humidity be the sole cause of the loss to apply. Concluding that Methodist's contention is incorrect, the Court then interprets the Exclusion and finds that Methodist's loss of sterile surgical stock falls squarely within it. Finally, the Court briefly addresses the exceptions to the Exclusion and declines to render summary judgment as to any such exception.

As a preliminary matter, each party disputes its opponent's characterization of the burden to demonstrate that coverage does or does not exist. *See, e.g.*, Doc. 25, Def.'s Reply, 2 ("Methodist misstates the parties' burdens concerning coverage."); Doc. 27, Pl.'s Reply, 5 ("AFM [i]ncorrectly [s]eeks [t]o [s]hift [t]he [b]urden [a]s [t]o [t]he [a]pplication [o]f [a] [p]olicy [e]xclusion [t]o Methodist.").

Ordinarily, "the insured has the [initial] burden of establishing coverage under the terms of the policy." *JAW The Pointe, L.L.C. v. Lexington Ins. Co.*, 460 S.W.3d 597, 603 (Tex. 2015) (citation omitted). Once the insured has done so, the burden shifts to the insurer to demonstrate that the insured's loss is subject to a policy exclusion. *Id.* (citing, *inter alia*, Tex. Ins. Code § 554.002). "If the insurer proves that an exclusion applies, the burden shifts back to the insured to show that an exception to the exclusion brings the claim back within coverage." *Id.* (quoting *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 124 (Tex. 2010).

For the purpose of resolving the pending motions, however, the Court finds that the initial burden is on AFM to establish that the Temperature/Humidity Exclusion applies. As stated above,

the parties each seek partial summary judgment to determine applicability of this very Exclusion. Such an inquiry presupposes that there is coverage under the policy. Additionally, the policy at issue is an all-risk policy, "meaning it generally covers" any loss to the covered property, "no matter what causes that loss or damage, *unless* the policy specifically excludes or limits coverage for losses resulting from a specific cause." *Id.* at 604 (emphasis in original) (citation omitted). Thus, the Court assumes without deciding that coverage exists and will hold AFM to the burden of demonstrating that the Temperature/Humidity Exclusion applies. AFM has met that burden.

A. *The Exclusion Does Not Require that a Change in Temperature or Humidity Be the Sole Cause of the Loss.*

Methodist posits that "[t]he Temperature/Humidity Exclusion [m]ust be the [s]ole [c]ause of the [l]oss in [o]rder to [a]pply." Doc. 15, Pl.'s Br., 10. In support of this position, Methodist points out the differences in the language of the Group I exclusions and the Group II exclusions. *See id.* at 10–11. Namely, Methodist highlights that Group I "excludes loss or damage directly or indirectly caused by or resulting from" a number of events "regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss or damage." *Id.* at 10 (quoting Doc. 16-2, Pl.'s App., 24). This anti-concurrent causation ("ACC") language, Methodist states, is not present in the Group II exclusions. *Id.* According to Methodist, "[t]he only way to harmonize [the differences between] these different categories is to say that, as to Group II . . . exclusions, the exclusion must be the only cause of loss, not one of several causes in a chain of events." *Id.* at 11. Otherwise, the ACC language present in the Group I exclusions would be "superfluous[.]" *Id.* at 14. Under Methodist's interpretation, because the thunderstorm and the power surge caused the change in temperature and humidity at MDMC, the change in temperature

and humidity did not act alone to cause the loss in sterile surgical stock. Thus, the Temperature/Humidity Exclusion would not apply.

The Court disagrees with Methodist. As AFM points out, Texas follows the concurrent-causation doctrine. *See* Doc. 21, Def.'s Resp., 16. Under the concurrent-causation doctrine, "when 'excluded and covered events combine to cause' a loss and 'the two causes cannot be separated,' concurrent causation exists and 'the exclusion is triggered' such that the insurer has no duty to provide the requested coverage." *JAW The Pointe*, 460 S.W.3d at 608 (quoting *Utica Nat'l Ins. Co. of Tex. v. Am. Indem. Co.*, 141 S.W.3d 198, 204 (Tex. 2004)). However, when a covered event and an excluded event separately and independently cause a loss, the insurer must cover the loss despite the exclusion. *Utica Nat'l Ins.*, 141 S.W.3d at 204 (citations omitted); *Guar. Nat'l Ins. Co. v. N. River Ins. Co.*, 909 F.2d 133, 137 (5th Cir. 1990).

If a policy contains ACC language, however, the concurrent-causation doctrine does not apply with respect to that provision. *See JAW The Pointe*, 460 S.W.3d at 608 ("However, we must evaluate JAW's claim in this case in light of the policy's anti-concurrent-causation clause, not the common-law concurrent-causation doctrine *that we addressed in cases involving policies that did not include a similar clause.*" (emphasis added)). Indeed, parties can contract around the concurrent-causation doctrine by drafting ACC clauses. *See Dillon Gage Inc. of Dall. v. Certain Underwriters at Lloyd's*, 440 F. Supp. 3d 587, 593 (N.D. Tex. 2020), *appeal filed*, No. 20-10262 (5th Cir. Mar. 10, 2020).

Methodist's argument—that Group I's ACC clause would be superfluous if Group II does not require that its excluded events be the sole cause of the loss—ignores the concurrent-causation doctrine. The concurrent-causation doctrine applies with respect to Group II because Group II lacks

ACC language. Thus, under the Temperature/Humidity Exclusion, AFM is not required to cover any loss caused in part by a change in temperature or humidity, so long as any other cause of the loss is *inseparable* from the change in temperature or humidity. *See JAW The Pointe*, 460 S.W.3d at 608; Doc. 13-1, Def.'s App., 43–44; Doc. 16-2, Pl.'s App., 25–26. However, under the concurrent-causation doctrine, AFM must cover losses caused by a change in temperature or humidity even if some other covered cause acted *separately and independently* to cause it. Due to Group I's ACC language, on the other hand, AFM does not have to cover any loss caused *at all* by any Group I-enumerated event, regardless whether that event caused the loss separately and independently of, or in combination with, some other covered event. *See JAW the Pointe*, 460 S.W.3d at 607–08; Doc. 13-1, Def.'s App., 43; Doc. 16-2, Pl.'s App., 25–26. Thus, Group I's ACC language is not superfluous if Group II exclusions apply to concurrent, inseparable causes—which they do, under the concurrent-causation doctrine. Rather, Group I's ACC language prevents application of the concurrent-causation doctrine to Group I, thus permitting AFM to deny coverage for Group I-excluded events irrespective of whether a covered event acts independently to cause the same damage.

The Court is not persuaded by Methodist's authority in support of its argument. First, Methodist cites *Worldwide Sorbent Products, Inc. v. Invensys Systems, Inc.*, 2014 WL 12597394 (E.D. Tex. July 31, 2014). Doc. 15, Pl.'s Br., 11. *Worldwide Sorbent* distinguishes between policy exclusions containing ACC clauses and exclusions lacking ACC clauses. *See id.* at *7. The district court stated that, with respect to those exclusions lacking ACC clauses, the insurer "must show that the loss was not caused, even in part, by any of the covered perils cited by" the insured. *Id.* (citation omitted). But *Worldwide Sorbent* does not mention, let alone analyze, the concurrent-causation doctrine or its effect on the policy. *See generally id.* Thus, the Court declines to follow *Worldwide Sorbent.*

Second, Methodist cites *Lloyd's Acceptance Corporation v. Affiliated FM Insurance Company*, 2013 WL 6511962 (E.D. Mo. Dec. 12, 2013). Doc. 15, Pl.'s Br., 11–12. The district court in *Lloyd's Acceptance*, applying Missouri law, accepted an insured's argument substantially similar to the one Methodist advances—that ACC language with respect to one exclusion indicates that other exclusions without ACC language apply only when the excluded event is the sole cause of the loss. 2013 WL 6511962, at *2. Methodist acknowledges that *Lloyd's Acceptance* applied Missouri law, but it posits that "[t]here is no reason for this Court not to follow" its analysis because the policy provisions at issue in *Lloyd's Acceptance* are identical to the ones at issue here. Doc. 27, Pl.'s Reply, 8 (citing, *inter alia*, *Apache Corp. v. Great Am. Ins. Co.*, 662 F. App'x 252, 255 (5th Cir. 2016) (per curiam)). But again, *Lloyd's Acceptance* does not mention the concurrent-causation doctrine, and it provides no indication that Missouri follows it or a similar doctrine. And this Court rejects Methodist's argument primarily *because* Texas applies the concurrent-causation doctrine. Thus, the Court does not find *Lloyd's Acceptance* persuasive here.

Finally, Methodist cites *City Brewing Company v. Liberty Mutual Fire Insurance Company*, 2009 WL 9054881 (Ill. Cir. Ct. Jan. 1, 2009), an Illinois trial-court order. Doc. 15, Pl.'s Br., 12–13. Like the court in *Lloyd's Acceptance*, the court in *City Brewing* accepted an insured's argument similar to the one Methodist now advances. *See* 2009 WL 9054881 ("The presence of the 'regardless of any other cause or event' language in the Group A, and its conspicuous absence in Group B, makes it clear that when Liberty Mutual intended for an exclusion to encompass those situations in which a listed exclusion was only one of several causes of a loss, and not the sole cause of that loss, it knew

how to express that concept.").[3] The Court acknowledges that it is not limited to cases decided under Texas law where out-of-state cases contain identical policy provisions, *see Apache Corp.*, 662 F. App'x at 255, but again, there is nothing in *City Brewing* that indicates the relevant state law follows the concurrent-causation doctrine. *See generally City Brewing*, 2009 WL 9054881. And even if it did, the Court is not inclined to agree with *City Brewing* simply because it interpreted similar policy terms. As mentioned above, *City Brewing* is an Illinois trial-court opinion. And the Court has found no case law, other than the few non-binding cases Methodist cites, that persuades it to agree with Methodist.

In sum, the Court rejects Methodist's argument that because the Temperature/Humidity Exclusion lacks ACC language, it requires that the excluded event be the sole cause of the loss. Rather, that the Exclusion lacks an ACC clause simply means that the concurrent-causation doctrine applies.

B.   *The Temperature/Humidity Exclusion Unambiguously Applies to Methodist's Loss.*

AFM asserts that the policy "plainly excludes loss or damage caused by changes in temperature or changes in relative humidity." Doc. 12, Def.'s Br., 7. In support of this argument, AFM states that the Temperature/Humidity Exclusion is unambiguous, and no exception to the exclusion applies. *Id.* at 7, 14. The Court agrees with AFM that the Exclusion is unambiguous and applies here. Further, though Methodist has not met its burden to show that an exception to the Exclusion applies, the Court declines to rule on the applicability of the exceptions due to a lack of adequate briefing.

---

[3] The electronic version of *City Brewing* contains no pagination, and it is not available in print. Thus, the Court cannot provide pinpoint citations to pages within the opinion.

### 1. The Exclusion is not ambiguous, and it applies.

In interpreting an insurance policy, courts look first to "the language of the policy because [they] presume parties intend what the words of their contract say." *Gilbert Tex.*, 327 S.W.3d at 126 (citation omitted). Policy terms are given "their ordinary and generally[ ]accepted meaning unless the policy shows the words were meant in a technical or different sense." *JAW The Pointe*, 460 S.W.3d at 603 (quoting *Gilbert Tex.*, 327 S.W.3d at 126). Where a term is subject to more than one reasonable construction, the term is interpreted in favor of the insured. *Id.* (citing *Gilbert Tex.*, 327 S.W.3d at 133). However, "[o]nly if an insurance policy [is] ambiguous . . . should courts construe its language against the insurer in a manner that favors coverage." *State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 433 (Tex. 1995) (citations omitted). But a policy provision is not ambiguous "simply because the parties interpret [it] differently." *Gilbert Tex.*, 327 S.W.3d at 133 (citing *Am. Mfrs. Mut. Ins. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003)).

Methodist argues in the alternative that the Temperature/Humidity Exclusion is ambiguous. Doc. 23, Pl.'s Reply, 7. Thus, according to Methodist, because both Methodist and AFM advance reasonable interpretations of the Exclusion, then the Exclusion should be construed in Methodist's favor. *Id.* But the Exclusion is not ambiguous. Again, the Exclusion reads:

> This Policy excludes the following, however, if physical damage not excluded by this Policy results, then only that resulting damage is insured:
> . . .
> 4. Loss or damage caused by or resulting from:
>     a) Changes of temperature . . . ;
>     b) Changes in relative humidity,
> All whether atmospheric or not, except as provided by the Change of Temperature and Off-Premises Interruption coverages in this Policy.

Doc. 13-1, Def.'s App., 43–44; Doc. 16-2, Pl.'s App., 25–26. Methodist's argument would require the Court to find the phrase "caused by or resulting from" ambiguous. But simply because Methodist interprets the phrase to mean "*solely* caused by or resulting from" while AFM interprets it more broadly, does not render the phrase ambiguous. *Gilbert Tex.*, 327 S.W.3d. at 133.

To "cause" means "[t]o bring about or effect[.]" *Cause*, BLACK'S LAW DICTIONARY (11th ed. 2019). To "result" means "[t]o be a physical, logical, or legal consequence" or "[t]o proceed as an outcome or conclusion[.]" *Result*, BLACK'S LAW DICTIONARY (11th ed. 2019). The Temperature/Humidity Exclusion thus applies to losses that are an effect, consequence, or outcome of a change in temperature or relative humidity. The Court finds no ambiguity in this language. *See Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 747 (Tex. 2006) ("In this case, it is hard to find any ambiguity in the ordinary meaning of 'We do not cover loss *caused by* mold.'" (emphasis added)); *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 210 (5th Cir. 2007) ("[T]he fact that an exclusion could have been worded more explicitly does not necessarily make it ambiguous." (citation omitted)). Here, it is undisputed that condensation accumulated in the affected rooms at MDMC due to a change in temperature and relative humidity. Doc. 13-2, Def.'s App., 97 ("The hot and humid air caused high humidity [in the affected rooms] where the surgical and other supplies at issue were kept[, and] [*a*]*s a result*, moisture accumulated on the ceiling, floor, cabinets, and other surfaces . . . ."); *see also* Doc. 16-3, Pl.'s App., 82 (same).[4]

Moreover, Methodist's interpretation—that "caused by or resulting from" in this case means "solely caused by or resulting from"—is unreasonable. There is nothing in the language of the

---

[4] And Methodist does not dispute AFM's contention that the Exclusion, if applicable, encompasses indoor changes of temperature and humidity. Doc. 12, Def.'s Br., 8; Doc. 23, Pl.'s Resp., 4 n.2.

Temperature/Humidity Exclusion that indicates it was intended to apply only where an excluded event is the sole cause of the loss. In fact, the inclusion of the language "*or resulting from*" indicates the opposite. "[R]esulting from" connotes a chain of events. *See Result*, BLACK'S LAW DICTIONARY (11th ed. 2019) (defining result as being "*a* physical, logical, or legal consequence" or "resulting as *an* outcome or conclusion" (emphasis added)); *Carrier v. Veterans Life Ins. Co.*, 2006 WL 1896067, at *5 (W.D. La. July 7, 2006) (applying Louisiana law, finding life insurance policy containing exclusion for death "caused by or resulting from" intoxication to unambiguously "encompass falling down a flight of stairs while severely intoxicated as a contributing cause of th[e] accident," thus overruling insured's argument that exclusion applied only where intoxication was direct result of death).

Finally, under the concurrent-causation doctrine, the Exclusion is triggered. Though AFM posits that the increase in temperature and humidity at MDMC is the sole cause of the loss of sterile surgical supplies, Doc. 21, Def.'s Resp., 10–14, this is not accurate. As recounted above, the parties agree that a thunderstorm caused a power surge at MDMC, which in turn caused two chillers to shut down. Doc. 13-2, Def.'s App., 96–97; Doc. 16-3, Pl.'s App., 81–82. Without operating chillers, the air handlers pulled warm air into the building, causing humidity in the affected rooms. Doc. 13-2, Def.'s App., 97; Doc. 16-3, Pl.'s App., 82. "As a result, moisture accumulated on the ceiling, floor, cabinets, and other surfaces of the [affected rooms.]" Doc. 13-2, Def.'s App., 97; Doc. 16-3, Pl.'s App., 82. Thus, the rise in temperature and humidity in the affected rooms is not only one of multiple events, but it is one of multiple *related and interdependent* events in the chain of causation resulting in Methodist's loss. Regardless of whether events earlier in the chain of causation than the change in temperature and humidity are themselves covered under the policy, because the change

in temperature and humidity is *not*, the concurrent-causation doctrine operates, and the Exclusion is triggered. *JAW The Pointe*, 460 S.W.3d at 608 (citations omitted). The Exclusion unambiguously applies to Methodist's loss.

> 2. <u>Methodist has not established that an exception to the Exclusion applies.</u>

There are three exceptions to the Temperature/Humidity Exclusion, and the Court briefly addresses each of them below. But as a preliminary matter, the Court notes that Methodist has not adequately briefed its position as to any of the three exceptions. Thus, the Court finds that Methodist has not met its burden with respect to the exceptions, but it declines to render summary judgment as to the applicability of any exception at this juncture.

As indicated above, the Temperature/Humidity Exclusion explicitly excepts events covered "by the Change of Temperature and Off-Premises Service Interruption coverages[.]" Doc. 13-1, Def.'s App., 43–44; Doc. 16-2, Pl.'s App., 25–26. The Change of Temperature provision "covers spoilage of insured stock and supplies due to . . . [c]hanges of temperature or changes in relative humidity, [d]irectly resulting from the interruption, in whole or part, of services consisting of electricity . . . by reason of accidental event, other than insured physical loss or damage, at a location." Doc. 13-1, Def.'s App., 46 (emphasis omitted); Doc. 16-2, Pl.'s App., 28 (emphasis omitted). The Change of Temperature provision was then replaced with the Spoilage provision, "cover[ing] spoilage of insured stock and supplies due to . . . [c]hanges of temperature or changes in relative humidity . . . [d]irectly resulting from an accidental event at a location." Doc. 13-1, Def.'s App., 89 (emphasis omitted); Doc. 16-2, Pl.'s App., 70 (emphasis omitted).

Methodist posits that the Court need not consider the Spoilage provision because "it has no bearing on whether the Temperature/Humidity Exception applies." Doc. 23, Pl.'s Resp., 4 n.1; *see*

*also* Doc. 15, Pl.'s Br., 7 n.3 (stating that the parties have agreed that the motions do not address "whether the additional limited coverage for 'Spoilage' applies"). Consequently, Methodist has not demonstrated that the Spoilage exception to the Temperature/Humidity exclusion applies. The Court makes no finding as to its applicability.

The second exception, the Off-Premises Service Interruption provision, "covers insured physical loss or damage at a location caused by or resulting from the interruption, in whole or in part, of incoming electric . . . by reason of an accidental event, not otherwise excluded by th[e] Policy, at the facilities of the service provider(s) . . . ." Doc. 13-1, Def.'s App., 53–54 (emphasis omitted); Doc. 16-2, Pl.'s App., 35–36 (emphasis omitted). It is subject, however, to a "Qualifying Period" of twenty-four hours. Doc. 13-1, Def.'s App., 33 (noting that AFM will not be liable for loss or damage under the Off-Premises Service Interruption provision "unless the period of liability exceeds 24 hours"); Doc. 16-2, Pl.'s App., 16 (same).

Methodist makes no argument for the application of the Off-Premises Service Interruption provision, and it does not dispute AFM's argument that such provision only applies when the service interruption exceeds twenty-four hours. Doc. 21, Def.'s Resp., 15; *see generally* Doc. 27, Pl.'s Reply. Thus, Methodist has also not demonstrated at this juncture that the Off-Premises Service Interruption exception to the Temperature/Humidity Exclusion applies. Again, the Court makes no finding as to its applicability.

Finally, the Temperature/Humidity Exclusion provides that "if physical damage not excluded by this Policy results, then only that resulting damage is insured[.]" Doc. 13-1, Def.'s App., 43–44; Doc. 16-2, Pl.'s App., 25–26. AFM refers to this as the "'resulting damage' exception" and argues that "Methodist cannot meet its burden to show [it] applies." Doc. 12, Def.'s Br., 14–16. Methodist

-16-

concedes in its briefing that it "is not claiming that the 'resulting damage' exception applies." Doc. 23, Pl.'s Resp., 17.

C.  *The Court Overrules Methodist's Objections to AFM's Evidence and Denies Methodist's Motion to Strike.*

In support of its response to Methodist's motion, AFM submitted an affidavit of William Norsworthy, an AFM adjuster, who testified regarding Methodist's claim of power interruption and the utility company's report concerning the power interruption. *See* Doc. 21-3, Def.'s Resp. App., 32–33. The affidavit is accompanied by records of the utility company. *See generally* Doc. 21-5, Def.'s Resp. App.; Doc. 21-6, Def.'s Resp. App. Methodist objects to the affidavit on the grounds that: it contains hearsay; Mr. Norsworthy testified to facts about which he has no personal knowledge; Mr. Norsworthy's testimony is inadmissible expert testimony; portions of his testimony violate the best-evidence rule; and portions of his testimony are irrelevant to the cross-motions. Doc. 26, Pl.'s Objs., 1–4. Methodist objects to the utility records on the grounds that they are hearsay, not properly authenticated, and irrelevant. *Id.* at 4–5. AFM timely responded to the objections (Doc. 28), and Methodist timely replied (Doc. 29). Because the Court does not rely on Mr. Norsworthy's affidavit or the utility records in reaching its holding, the objections are moot for the purpose of the pending motions. The Court **OVERRULES** Methodist's objections **WITHOUT PREJUDICE** to re-asserting them in later proceedings.

In support of its response to Methodist's objection, AFM supplied a supplemental declaration of Mr. Norsworthy. *See* Doc. 28-1, Def.'s Ex. 1. The supplemental declaration reiterates some testimony from Mr. Norsworthy's initial affidavit and supplies further context as to Mr. Norsworthy's foundation for that testimony. *See generally id.* Methodist moves to strike this declaration on the

ground that it is an improper attempt by AFM to supplement the summary-judgment record without the Court's leave to do so. Doc. 30, Pl.'s Mot. to Strike, 2. The Court does not rely on Mr. Norsworthy's supplemental declaration in arriving at its holding as to the pending cross-motions. Thus, Methodist's motion to strike (Doc. 30) is **DENIED** as moot.

## IV.

## CONCLUSION

For the foregoing reasons, AFM's motion for partial summary judgment (Doc. 11) is **GRANTED**, and Methodist's (Doc. 14) is **DENIED**. Further, Methodist's objection to AFM's summary-judgment evidence (Doc. 26) is **OVERRULED** as moot **WITHOUT PREJUDICE**, and, similarly, its motion to strike (Doc. 30) is **DENIED** as moot.

**SO ORDERED.**

**SIGNED: February 24, 2021.**

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE